UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| V. | : CASE NO. 1:18-CR-00016-JJM-LDA |
| | : |
| SHAWN SWANT | : |

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Shawn Swant, by and through counsel, submits this memorandum to aid the Court with imposing a sentence that is "sufficient, but not greater than necessary" to achieve the statutory sentencing purposes of 18 U.S.C. § 3553 (a). As such, he asks the Court to impose a term of incarceration that does not exceed thirty (30) months.[1]

### I.  BACKGROUND

Mr. Swant was arrested on September 19, 2017 for possessing child pornography. Law enforcement learned of him following an investigation and arrest of others for using "Kik," a mobile messaging application, used to download and distribute child pornography. Members from the Rhode Island State Police Internet Crimes Against Children (ICAC) Taskforce identified Mr. Swant as one of the Kik users who accessed the child pornographic files.

On September 19, 2017, police executed a search warrant of Mr. Swant's home and his electronic devices. They seized several computers and related electronic devices, some of which contained child pornography. Mr. Swant was cooperative with agents during the warrant execution and his arrest. This included acknowledging his online screenname, use of "Kik" and contact with child pornography.[2]

---

[1] In the parties' pretrial agreement, they agree to jointly request a sentence of thirty (30) months.
[2] While the Defense concedes that Mr. Swant did not fully confess his misconduct at the time of arrest, he made multiple truthful admissions to police that confirmed his online identity, use of the "Kik" messenger application and viewing of child pornography.

Following his arrest, Mr. Swant initially appeared before the Court and was released on a $10,000.00 unsecured bond with conditions that include GPS monitoring, home detention and supervision by Pretrial Services. On February 27, 2018, he pleaded guilty, pursuant to an agreement with the government, to a Criminal Information charging a single count of Possession of Child Pornography in violation of U.S.C. 18 U.S.C. § 2252 (a)(4)(B) and (b)(2). He is scheduled for sentencing on September 7, 2018. Mr. Swant has successfully remained in compliance with all conditions of pretrial release for approximately one (1) year.[3]

U.S. Probation issued its final presentence report (PSR) on August 1, 2018. The Defense does not have any objections to the final PSR, to include the assessed criminal history category of I, [4] total offense level of 30,[5] and an advisory sentencing guidelines range of 97 to 121 months of incarceration.[6]

## II.   SENTENCING FACTORS AND CONSIDERATIONS

The District Court is required to fashion a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment set forth in 18 U.S.C. § 3553 (a). *United States v. Booker*, 543 U.S. 220 (2005). Sentencing should begin with a calculation of the applicable sentencing guidelines range. *Gall v. United States*, 128 S. Ct. 586, 596 (2007) (*citing Rita v. United States*, 127 S. Ct. 2456, 2480 (2007)). The guidelines calculation is a starting point and initial benchmark for the Court to consider, however, it is not the only sentencing consideration. *Id.*

A Court may not presume the guidelines range is reasonable, but must make an individualized assessment of each defendant based upon the facts presented in each case. *Gall,* 128 S. Ct. at 597. After both parties are afforded an opportunity to argue for whatever sentence

---

[3] PSR, ¶.7.
[4] PSR, ¶.42.
[5] PSR, ¶.39.
[6] PSR, ¶.92.

2

they deem appropriate, the Court must then consider the factors[7] of 18 U.S.C. § 3553 (a) to determine the most appropriate sentence for the instant case. *Id.* As such, Mr. Swant asks the Court to impose a sentence not exceeding 30 months.

### (1) The Nature and Circumstances of the Offense.

Mr. Swant makes no effort to minimize or marginalize the seriousness of his misconduct. He knows full well what he did was wrong. He initially cooperated with police and ultimately accepted responsibility for his actions by pleading guilty. When weighing the gravity of his offense conduct, he asks the Court to consider the passage of time since his acquisition or sharing of child pornography. He shared images in October 2015,[8] nearly two years before his arrest, and again in October 2016,[9] approximately one year before his arrest. While he still possessed some child pornography in September 2017, there exists no evidence that he was actively sharing these materials at the time, and certainly no evidence whatsoever that he was involved with production or high-volume distribution of them. In fact, the files discovered on his computer were saved in 2015[10] – nearly two years before his arrest.

---

[7] To determine an appropriate sentence that is sufficient, but not greater than necessary, the Court shall consider the following:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed:
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
    (3) the kinds of sentences available;
    (4) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
    (5) any pertinent policy statement issued by the Sentencing Commission;
    (6) the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct; and
    (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553 (a).

[8] PSR, ¶. 17.
[9] PSR, ¶.18.
[10] PSR, ¶. 20.

The parties have stipulated that Mr. Swant's offense conduct involved 600 images.[11] However, this stipulation is for sentencing guidelines application purposes. See U.S.S.G. § 2G2.2 (b)(7)(D). In actuality, Mr. Swant possessed and/or shared thirteen (13) images in October 2015,[12] four (4) videos and two (2) images in October 2016,[13] three (3) additional images in October 2016,[14] and twenty (20) videos in September 2017 when arrested.[15] This results in a total of eighteen (18) images and twenty-four (24) videos, which is considerably less than the quantity overstated by the guidelines provision governing the conversion of videos to images. He asks the Court to take this into consideration when adjudging his sentence.

**(2) History and Characteristics of the Defendant.**

Mr. Swant is age 28 and was born in Mason City, Iowa. His parents, Terry Swant and Sheri Morris, were married at the time of his birth. When Mr. Swant was age 5, his father was convicted in federal court for crimes stemming from his involvement in a methamphetamine distribution organization. The Court sentenced him to 219 months of incarceration, which was later reduced to 144 months or 12 years.

After his father's conviction, Mr. Swant's mother placed him in the custody and care of his paternal grandparents (Ken and Connie Swant) to "find herself." At the time, she suffered from both substance abuse and mental health problems. Because she could not then turn the corner, his grandparents obtained legal guardianship over him.

Mr. Swant was basically raised by his grandparents. They did their best to provide him with that they viewed to be a "normal" life. He was raised in a loving home, attended church, went to school and also involved with Boy Scouts. However, because of his father's arrest and mother's absence, Mr. Swant was subjected to bullying throughout middle school. In high

---

[11] PSP, ¶.6.
[12] PSR, ¶.11.
[13] PSR, ¶.17.
[14] PSR, ¶.18.
[15] PSR, ¶.19.

school, he was regularly picked on and threatened by other students. Things worsened to the point where his grandparents felt it was best for him to move away and transfer to a new school. Mr. Swant then moved to Rockford, Iowa to live with his paternal uncle until his father's release from prison. He lived with his dad for a short while until age 17 when he returned to live with his mother, who had regained her sobriety.

Mr. Swant eventually quit high school to enlist in the Iowa National Guard. He earned his GED while in the National Guard in 2007. After completing basic and advanced training, he returned to reside with his mother, obtained employment and enrolled in college. He enrolled in Northwest Louisiana Technical College and graduated in May 2015 with a technical diploma in Industrial Instrumentation Technology. He also received a certification as an Instrument Technician in February 2016 from the National Center for Construction Education & Research in Alachua, Florida.

After college, Mr. Swant returned to live with his father and thereafter relocated several times to Texas, Nebraska, Kentucky and California. It was during this last stop, while living with friends in San Diego, California, where he met Katie Woodard, now his wife, whom he married on January 13, 2018.

Prior to meeting Katie, in 2009, Mr. Swant was in a relationship with Leslie Blankenship with whom he had one child, Ethan Blankenship, who is age 6. Ms. Blankenship has custody over Ethan, however, Mr. Swant has visitation and communicates with his son on a regular basis. Mr. Swant has no other children.

Aside from his wife, Mr. Swant maintains strong relations with his parents, step-parents, step-siblings and grandmother. His father, Terry Swant is age 53, employed as an industrial contractor, remarried and lives in Rockford, Iowa. His mother, Sherri Morris, is age 55, employed as a logistics coordinator for a medical company, remarried to Kelly Morris and has two children, Mr. Swant's half-siblings, Donovan Knutson, age 16, and Disiree Swant, age 13.

The family resides in Greenwood, Indiana. Though disappointed and concerned for Mr. Swant's future, his family members support him during this difficult.

Mr. Swant has a stable employment history. While living in Rhode Island, he formerly worked at Tasca Automotive Group in Cranston, RI. Unfortunately, due to his current legal situation, he was terminated. From July to September 2017, he worked as a technician with Suez Water Environmental Services in Newport, RI. He also worked an instrument technician from March 2017 to May 2017; was similarly employed throughout 2016; from August 2015 to September 2015 as a maintenance technician; and finally, from 2012 to 2013, as a security officer. This consistent employment demonstrates Mr. Swant's hard work ethic and clear ability to lead a law-abiding lifestyle as a gainfully employed, productive member of society.

**(3) The Need for the Sentence Imposed to Reflect the Seriousness of the Offense.**

Mr. Swant's admitted actions amount to serious misconduct by any measure or standard. The Defense concedes that punishment for his actions is certainly warranted to include a term of incarceration. In fact, the applicable U.S.S.G. range provides for a term of incarceration of 97-121 months. Post-*Booker*, however, this Court has the discretion to not impose this advisory guideline sentence for Mr. Swant. He asks the Court to impose whatever combination of sentencing conditions it seems appropriate, but not to impose jail exceeding 30 months.

While there is no meaningful excuse or justification for Mr. Swant's admitted acts, what he needs most is therapy and treatment, opposed to spending a lengthy time in jail. Incarceration mainly serves to punish an offender for his criminal acts. Restricting Mr. Swant's liberty by confining him to his home with electronic monitoring, conditions he has endured for the past (12) months, has already served as a form of punishment. If the Court believes further punishment is necessary, the Court may easily extend the imposition of these conditions opposed to sentencing him to a long prison term.

During the past year, Mr. Swant self-referred for treatment with Dr. Ingle. His commitment to counseling and resulting progress, personal insight and emotional development are testament to his likelihood of success and unlikelihood of recidivism. Dr. Ingle concluded, based upon his testing and evaluations of Mr. Swant, that he "lack[s] sexual interest in children, has all the tools to successfully move past this obstacle, and would be "best managed in the community in a more medicalized setting than a criminal justice one." He asks the Court to take this assessment into consideration when adjudging sentence.

**(4) Promote Respect for the Law, Provide Just Punishment for the Offense, Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant.**

A lengthy prison sentence, as suggested by the guidelines, is not necessary to achieve this multi-faceted sentencing objective for Mr. Swant. First, he has absolutely no criminal history. This case represents Mr. Swant's first and last negative encounter with the criminal justice system. While he made a series of poor choices that have brought about this prosecution, Mr. Swant's lack of criminal contacts and honorable military service highlight his overall respect for the law. This is further indicated by his compliance with conditions of pretrial release throughout the past year and manner by which he handled himself with police when arrested.

Jail time is not necessary to deter further misconduct, especially of this nature, from Mr. Swant. Again, his lack of criminal history plays a role here. Moreover, his voluntary and self-referral to treatment and good behavior while on bail are strong indicators of his future willingness and ability to live within the limits of the law. Because the instant offense qualifies as a sex crime, Mr. Swant will inevitably be under the supervision of Probation for considerable time once released from jail and required to register as a sex offender. These added conditions of monitoring will further provide protections to the public from Mr. Swant, however, protection for the public is unnecessary for this particular defendant.

### (5) Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.

Mr. Swant avers that a lengthy jail sentence is also not required to provide him with any education or vocational training, medical care or other correctional treatment. He is in good health. Although he is presently treating with David Ingle, Psy.D., this care – outpatient counseling and/or mental health therapy – may be continuously and arguably, more effectively provided to Mr. Swant outside of the penal system. As for education, Mr. Swant has both a GED and a college degree. He also has a steady work history. The combination of the two render him suitable for employment once released from any potential period of incarceration, and therefore, a lengthy prison term is not justified by this particular sentencing factor.

### (6) The Need to Avoid Disparate Sentences

The Defense offers the Court some sentencing statistical data to consider when seeking to avoid disparate sentences. By way of the state criminal justice system, an inquiry was placed with the Rhode Island Judiciary for sentences imposed in child pornography cases from 2006 to 2016. The inquiry yielded 1,084 cases that include charges for possession and producing child pornography. Of these cases, Rhode Island Courts imposed actual jail sentences in only 74 instances. These numbers yield a statistic that a term of incarceration was imposed in 11 percent of child pornography cases prosecuted in Rhode Island Superior Court over the decade preceding Mr. Swant's arrest in September 2017.[16]

Regarding cases in U.S. District Court for the District of Rhode Island, the Defense offers two that counsel worked on for comparison purposes. In *United States v. Cesare DeCredico*, Case No. 15-CR-00036, where the defendant was charged with Possession of Child Pornography, the case involved over 2,600 images and 375 videos, considerably less than Mr. Swant. The total offense level in that case, for a defendant with no criminal history, was 28

---

[16] The data provided by the RI Judiciary is available for inspection by the Court upon request.

resulting in an advisory guideline range of 78 to 97 months.  Notwithstanding, the Honorable Mary M. Lisi sentenced Mr. DeCredico on November 6, 2015 to 12 months and one day.  This sentence reflected an 85% reduction from the low end of the advisory guidelines range.

In *United States v. David Skally*, Case No. 16-CR-00098, where the defendant was also charged with Possession of Child Pornography, the case involved 418 images and 284 videos.  The total offense level in that case, for a defendant also with no criminal history, was 24 resulting in an advisory guideline range of 51 to 63 months.  Notwithstanding, the Honorable William Smith sentenced Mr. Skally on July 10, 2017 to 30 months.   This sentence reflected a 41% reduction from the low end of the advisory guidelines.

By comparison, the facts and circumstances of Mr. Swant's case are considerably less egregious than *DeCredico* and *Skally.*

|            | **DeCredico** | **Skally** | **Swant** |
|------------|---------------|------------|-----------|
| **Images** | 2600          | 418        | 18        |
| **Videos** | 375           | 284        | 24        |

Mr. Swant's images consist of 1% of those possessed by *DeCredico* and 4% of those possessed by *Skally*.  His images consist of 6% possessed by *DeCredico* and 8% of those possessed by *Skally*.  While Mr. Swant's advisory guidelines range is much higher than these defendants, this is largely due to the application of guidelines enhancements that overstate the severity of his misconduct, notwithstanding the fractionary quantities of child pornographic materials he possessed compared to more culpable offenders.

### III.    $5,000.00 SPECIAL ASSESSMENT

As noted in the PSR, Mr. Swant is subject to the possible imposition of a $5,000.00

special assessment in accordance with 18 U.S.C. 3014 (a) and the Victims of Trafficking Act of 2015.[17] While the Defense concedes that Mr. Swant qualifies for this expensive assessment, the Court has discretion to not impose it where it determines that a defendant is indigent.

Mr. Swant claims indigency.  Though he is represented by private counsel, his legal expenses were paid by his spouse.  When the two married, they signed a prenuptial agreement.  Mr. Swant personally has no personal assets other than a motor vehicle valued at approximately $4,000.00.  His liabilities nearly triple the value of this limited asset as demonstrated on the Net Worth Shot Form Statement attached to the PSR.  Given his financial circumstances, he cannot afford to pay this hefty special assessment, which if imposed will only stifle or stall his ability to get on his feet financially once released from incarceration.

## IV.  MISCELLANEOUS REQUESTS

Mr. Swant asks the Court to recommend to the Bureau of Prisons (BOP) that he be allowed to serve any imposed sentence of confinement in a facility as close to Iowa as possible to facilitate contact with and visits from family.

## V.  ATTACHMENTS

A. Statements of Support;

B. Evaluation from David W. Ingle, Psy.D.; and

C. Photographs.

## VI.  CONCLUSION

Based upon the foregoing, Mr. Swant respectfully asks the Court to impose a sentence not exceeding thirty (30) months, which he contends is "sufficient, but not greater than necessary" to achieve the objectives of 18 U.S.C. § 3553 (a).

Respectfully submitted on this 5th day of September 2018.

---

[17] PSR, ¶109.

Respectfully submitted

/s/ John L. Calcagni III, Esq.
John L. Calcagni III (Bar No.: 6809)
Law Office of John L. Calcagni III, Inc.
One Custom House Street, Third Floor
Providence, RI 02903
Phone: (401) 351.5100
Fax: (401) 351.5101
Email:  jc@calcagnilaw.com

**CERTIFICATION**

   I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on September 5, 2018.

/s/ John L. Calcagni III, Esq.
John L. Calcagni III (Bar No.: 6809)
Law Office of John L. Calcagni III, Inc.
One Custom House Street, Third Floor
Providence, RI 02903
Phone: (401) 351.5100
Fax: (401) 351.5101
Email:  jc@calcagnilaw.com