IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Cr. No. 18-016M |
| SHAUN SWANT | |

GOVERNMENT'S SENTENCING MEMORANDUM

After careful consideration of the facts of this case, the defendant's history and characteristics, and federal sentences imposed in cases of this nature, in this district and nationally, the defendant and two United States Attorney's Offices, in two different states, reached a plea agreement addressing the appropriate charges and sentencing recommendation for the defendant's crimes. Despite the defendant's artful attempts to now undermine that negotiated plea agreement on the eve of sentencing, the parties agreed that a sentence of 30 months of imprisonment was not only reasonable, but necessary to achieve the goals of 18 U.S.C. § 3553, and that a sentence of imprisonment of less than 30 months was not sufficient to achieve those goals.[1] The government stands by its recommendation to this Court – considering the defendant's background and characteristics, a sentence of 30 months of imprisonment, 5 years of supervised release, and a special assessment of $5,000, will address the nature of the offense, the

---

[1] At the time the parties reached this agreement, they were under the misapprehension that the defendant's guidelines range with a plea was 51-63 months imprisonment.

need to punish the defendant, the need for deterrence, the need to protect the public, and the need to avoid unwarranted disparities.

NATURE OF THE OFFENSE

The defendant committed multiple federal offenses over the course of two years in at least two different states, including possession of child pornography, transportation and distribution of child pornography, and receipt of child pornography. The images and videos possessed, received, and distributed by the defendant involved more than just the vile and abusive posing of underage children; they involved the molestation of those children. Moreover, the chat communications that could be located between the defendant and his child pornography associates demonstrate that the defendant wants to see sexually abused children crying and screaming while being molested. The defendant also discussed sex with children and an interest in teaming up with a family in which the mother sexually abuses her children. The defendant's engagement in this black market continued up until the execution of the search warrant in this case. It occurred under the nose of his then fiancée, now wife, unbeknownst to her, their family, or their friends. Furthermore, it is evident from the letters submitted on his behalf, his statements to his paid psychologist,[2] and his statements to law

---

[2] Attached to the defendant's sentencing memorandum, which was filed at 5:00 p.m. on September 5, 2018, was a report of a psychologist that the defendant hired to provide treatment and an assessment in October 2017. That report was authored by a psychologist hired by the defendant; is based upon information supplied to that psychologist by the defendant; and includes the assertion that the defendant's arrest stems from the possession, receipt and distribution of child pornography over the course of two days in 2015.

2

enforcement that he has yet to admit the full scope of his criminal activities and interests.

## NEED FOR THE SENTENCE IMPOSED

The U.S. Sentencing Guidelines (hereinafter "the guidelines") assessed the defendant's criminal conduct and lack of criminal history as warranting a sentence of imprisonment of 97-121 months with a plea.  The statutory framework applicable to the defendant's conduct suggests that a sentence of 60 months imprisonment is the bare minimum sentence necessary to address the defendant's crimes.  The defendant, through his retained counsel, negotiated an even more beneficial agreement for himself, one that includes a plea to mere possession and a recommendation of imprisonment 5 years and 7 months below the low-end of the guideline range and 30 months below the statutory mandatory minimum potentially applicable to his conduct.  While the guidelines and the statutory framework (given the charge) are not binding on the Court, they are a starting point and a useful tool for the Court to use in assessing the offense and offender, and to avoid unwarranted disparities with other similarly situated offenders.

Congress, the Justice Department, the U.S. Sentencing Commission, and courts across this country have recognized that possession of child pornography is a serious offense warranting punishment.  It is not a victimless crime.  Every time the defendant sought out, traded and viewed a pornographic image of a child, he victimized that child and contributed to the lifetime of anguish these children endure.

> The Supreme Court has repeatedly explained, for thirty years, that individuals depicted in child pornography are harmed by the continuing dissemination and possession of such pornography containing their image.  Such materials are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.  Indeed, the Court has stated that as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated.  Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being.  These statements were well supported by medical and social science.

United States v. Kearney, 672 F.3d 81, 94 (1st Cir. 2012) (internal citations and quotations omitted).

Federal courts have recognized the seriousness of the crime and the repeated harm done to the child victims of sexual abuse each time an offender obtains and views the record of their abuse.  In fact, according to the U.S. Sentencing Commission, in fiscal year 2017, "prison only" was imposed in 96.1% of the child pornography cases nationally and "probation only" was imposed in a mere 0.8% of the cases.[3]  See United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2017, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2017/1c17.pdf.  That is, out of 1,810 child pornography cases prosecuted nationally, only 15 defendants across the country received a sentence of only probation.

---

[3] A split sentence and "probation and confinement" were imposed 2.5% and 0.5% respectively.

## DETERRENCE

Punishment and the need for a sentence that reflects the seriousness of the offense are not the only concerns. Congress, the Supreme Court, and the Sentencing Commission have all expressed the view that deterrence is an important factor when fashioning an appropriate sentence. See United States v. Milo, 506 G.3d 71, 76 (1st Cir. 2007). This factor is no less important in child pornography cases.

In United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007), the court pointed out:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded - both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

See also Osborne v. Ohio, 495 U.S. 103, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the production.")

Although the defendant has been involved in child pornography for at least two years, given his lack of criminal history, the Court's sentence may succeed in specifically deterring him from future misconduct. But, the sentence must reflect the need for general deterrence as well. See generally United States v. Gall, 829 F.3d 64, 75

(1st Cir. 2016) (upholding the district court's sentence of imprisonment in excess of the parties' recommendations and noting that the district court predicated its sentence in part upon the recognition that the defendant's "possession of child pornography fueled the market for child pornography, and thus indirectly harmed children"); United States v. Crespo-Rios, 787 F.3d 34, 38 (1st Cir. 2015) (vacating the sentence in an obscenity and possession of child pornography case and remanding because the district court failed to consider the seriousness of the offense, the need to avoid sentencing disparities, the need to promote general deterrence, and the need to promote respect for the law).

### UNWARRANTED DISPARITIES

As addressed above, national treatment of cases like the defendant's result in jail sentences in nearly all of the cases. It is extremely unusual for a defendant to receive a non-jail sentence. A probationary sentence in a case like this should be reserved for the most extraordinary of situations, well outside the heartland of child pornography cases.

This case lacks any glaring facts in extenuation or mitigation. The defendant is well-educated, bright, and has work history, albeit an erratic one. His life has not been perfect, but he was raised by loving, financially stable grandparents, and he has the support of his now grounded parents. The defendant was not abused, sexually or otherwise. He is an introvert, yet he has friends and now a wife. He cannot point to any particular justification or explanation for his decision to distribute and possess child pornography, nor does he lack the intelligence or sophistication to appreciate the terrible harm wrought by such crimes. In fact, as child pornography offenders go he is

extremely ordinary.

In trying to reach the right recommendation to this Court, the government relied in part upon Chief Judge Smith's treatment of David Skally, Cr. No. 16-98S.[4] Mr. Skally's case was less aggravating than defendant's in the sense that Skally was older (in his 50s); Skally did not distribute the pornography he possessed; the nature of the child pornography possessed by Skally was not sadistic; and there was not evidence that Skally was searching for images of children being tortured, that is, "a crying/screamer." Additionally, Skally tried to cooperate with the United States, although he had no useful information. Nonetheless, the government believed that Skally's case was similar in terms of the scope of the offense and the fact that he, like the

---

[4] Mr. Skally was represented by the same defense counsel and raised some of the same arguments that Defendant Swant has raised, including the argument that were he to have been prosecuted by state authorities, he would not face a jail sentence. In Skally's case, the government urged the court to reject that argument noting,

> This comparison is inapt for several reasons. As an initial matter, it fails to recognize that the two sovereigns have different sentencing regimes based in part on different goals, challenges and resources. The Rhode Island state sentencing system is heavily based on a "probation-first" model, with long probationary sentences issued with the potential hammer of probation violations aimed at deterrence of future criminal conduct. Defendant's argument is necessarily premised on the notion that the state system of sentencing is preferable to the federal system. It is not at all clear that such a system is preferable. It is arguable that the state has become overly reliant on this approach. A study conducted by the Council of State Government's Justice Center noted that as of fiscal year 2015, Rhode Island had the second highest rate of probationers per capita in the country. "As a result probation officers are overwhelmed and are unable to provide meaningful supervision that reduces recidivism and improves public safety." See https://csgjusticecenter.org/jr/ri. (Last checked July 8, 2017).

Government's Sentencing Memorandum, pp. 5-6, United States v. David Skally, Cr. No. 16-98S. Chief Judge Smith specifically rejected the defendant's argument appreciating the different sentencing regimes of the two sovereigns.

defendant, did not have criminal history, a significant factor.  The United States also believed, incorrectly, that Skally and the defendant faced similar guideline ranges.  Accordingly, the United States reached an agreement with the defendant that would result in a joint recommendation that the two cases receive similar treatment by the Court.  The United States still believes this to be a correct approach and would urge the Court to appreciate the similarities of the cases.  The United States strives to be consistent and would urge this Court to likewise strive for consistency.

## CONCLUSION

Over the course of two years, the defendant participated in the child pornography black market, harming children.  He did so despite having family, friends, and opportunity.  His sentence should reflect the seriousness of the offense, the need to punish the defendant, the need for deterrence, and the need to avoid unwarranted disparities.  The Court should sentence the defendant to 30 months imprisonment, 5 years of supervised release, and a $5,000 special assessment.

    Respectfully submitted,

    STEPHEN G. DAMBRUCH
    United States Attorney

    /s/ Sandra R. Hebert
    SANDRA R. HEBERT
    Assistant U. S. Attorney
    U. S. Attorney's Office
    50 Kennedy Plaza, 8th Floor
    Providence, RI 02903
    401-709-5000
    Sandra.hebert@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2018, I caused the Government's Sentencing Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic Notification

Mr. John L. Calcagni, III
One Custom House Street, Suite 300
Providence, RI 02903
jc@calcagnilaw.com

/s/ Sandra R. Hebert
SANDRA R. HEBERT
Assistant U. S. Attorney
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
Sandra.hebert@usdoj.gov